Last time I saw Youssef Rooks was when I took the Louisiana Bar Exam. That's been a while, so I come to the federal court and I got to untangle Youssef Rooks. So my Texas and Mississippi friends are going to figure it out. So you better argue, don't act like I have any kind of latent insight about Youssef Rooks. When I left the Bar Exam, I'm like, I will never see Youssef Rooks again. And here it is, big time, in the middle, with none other than the tax people on the other side. Anyway, that's my mea culpa, mea culpa. But anyway, just good to see you. Don't get too many people down here from Shreveport, so it's good to have you here. All right, but super serious dealing in this one. You're up on behalf of the appellants, and you're on. I am. Thank you, Your Honor. It is very nice to see you again as well. When Henry Goodrich, his first wife, died, she created a dismemberment of ownership of certain of the assets in her estate. She granted a naked ownership interest to her three children in those assets, and she granted a usufruct interest to her husband. In this case, those children are seeking nothing more than to recover what they inherited from their mother in 2006. They seek nothing from Henry Goodrich. On the other hand, Henry Goodrich, at the IRS, seeks to recover a debt from Henry Goodrich. During his life, he spent his money, he didn't pay his taxes, and so he died owing the government income taxes. The government is entitled to levy on all of his assets to recover the amount that he owes in taxes, but the government is not entitled to levy on the assets that belong to the naked owners to recover that debt. The government is no more entitled to do that than it is entitled to levy on my assets or your assets to pay the tax debt of Henry Goodrich. This is precisely what the case is about. The IRS is attempting to recover Henry Goodrich's tax debt from the assets that the naked owners inherited from their mother in 2006. The parties agree that this issue is determined by Louisiana law. And even though this is unusual, it's not all that difficult. And even though you may not have seen it since law school days and bar days, it's still not all that difficult. And in fact, this court has dealt with the issues that are in this matter and dealt with them fairly plainly. The Louisiana Code articles are very clear. You suffocate this member's . . . Having said that, I always like to cut to the chase. You tried the matter before, Magistrate Judge Hornsby, Louisiana lawyer, I mean, by consent. So where did he go wrong? I know, you know, you've got able counsel on both sides, and I know you made these. So where did he take the wrong fork in the road? I think the wrong fork in the road comes from the court of appeal cases that he relied on, the succession of catchings, the Maju case. And both of those cases dealt with a scenario that doesn't apply here. The question there was whether or not the naked owner prevails against the legatee, not whether the naked owner prevails against another creditor or against the IRS. And those are two different issues. Because in those cases, it didn't matter whether the naked owner was treated as an owner or treated as a creditor. He still won. A creditor beats a legatee, and a naked owner beats a legatee. So in both of those cases, it really didn't matter. What's got hung up in those cases, Your Honor, is this. Several cases have adopted the construct of a creditor-debtor relationship in order to use a fructus. Okay? And so it's . . . It looks like. I'm sorry? It looks like. It looks like. And that's the language that they use. And it's the language that Judge Hornsby used. He says this is a quasi-relationship, or it's in the nature of a creditor-debtor relationship. And those are the same words that were used in those court of appeal cases, Your Honor. Counsel, is it a wrong conceptualization? I mean, I've struggled with this because I didn't have it on the bar exam. I live across the river. And so the conceptualization I have is life estate. But it seems to be different than life estate. But the critical point, I guess, is sort of the one you're making legally. I mean, which authority do we follow, and which is the right construct? Is it debtor-creditor, or is it plus? But here's the other question that I hope you'll respond to. It seems to me that regardless of those things, if you shore away some of the terminology, his wife left him the authority to dispose of non-consumables that are subject to the use of fruct. And in the event of such disposition, the use of fruct shall not terminate, but shall attach to the proceeds of such disposition. So that, I mean, effectively, the kids had some interest in the equivalent. But the fact that she gave him the ability to convey the non-consumables, convert them into consumables, isn't the law that, at that point, it does sort of look more like a debtor-creditor relationship. I mean, debtor-creditor relationship, and the IRS would be able to take effectively from the gross estate before the kids get the net estate. That's a long-winded question, but that's kind of my conceptualization, so tell me how I'm wrong. I don't think so, because what she did in the will is not uncommon, and it's not contrary to the law. All that did is it converted this use of fruct over a consumable into a non-consumable. I'm sorry. Reverse. From a non-consumable into a consumable. That's all it did. And so, we're here today talking about consumables. But can't the use of fruct spin the consumables and basically naked owners get what's left? No doubt, but think about it this way. He sold a stock, got $428,000 from that stock. That did not increase his patrimony. That did not increase his estate by $428,000, because the sale of that stock and the receipt of that cash was always burdened with an obligation to return not those dollars, but $428,000 to the naked owners. It didn't increase his patrimony. And so, we're not seeking to decrease his patrimony by recovering what we inherited from mother. And so, that's a part of a difference. The other thing you asked, which authority do we take? And I think this case can begin and end on that very simply and go back to the Stewart v. Ussery case. Well, let me ask you this. There's a very esteemed court located on Royal Street. It's called the Supreme Court of Louisiana. Beautiful building, grandeur, seven very smart justices sitting down there. So if, as you argued, the trial court's problem was following catchings and the other case, so if there's a deviation in the case law, vis-a-vis construing the use of fraud, etc., etc., if it's novice, if it's first impression, etc., why shouldn't we certify the very tight question to the Supreme Court of Louisiana down the street on Royal to rather than us making, quote, the eerie guess, so to speak, even if you say, okay, it's foolproof, I got it, but just your argument path that if there's a problem with catchings and the other cases, why shouldn't we give the Supreme Court of Louisiana an opportunity to summarily say, preemptorily say, in construing the use of fraud, etc.? Because there's obviously going to be plenty of cases that have tax consequences with use of fraud, with lots of money and so forth. So I don't remember in the briefing asking about certifying. And it's not a matter of us ducking it, but just it's such a pure issue that you both concede Louisiana law applies. I don't disagree with you, Your Honor. I think that is one avenue that this court could take is to certify that issue to the Louisiana Supreme Court. All right. If we did so, articulate for me succinctly what would be the certifiable question. I think it's the same question that we presented to this court, and that is the question of whether or not the naked owner is claiming against the use of fructuary as a state as owner or as creditor. And I think that will resolve this issue. Questions subsume this question of whether or not debtor-creditor is a reasonable analog in the construction of use of fructs, etc., in turn. I'm not saying we're going to do that, but just when I read the briefs and, you know, especially when I'm reading that, okay, it's catchings and those cases that's going on, they're the ones that ought to, you know, straighten it out. They're not bound by what we say. But anyway, I'm going to ask the government the same, you know, question is going. So it's not that we're not interested in arresting the mayors, but I just thought since I had you here, we had you here, we'd find out what the views on it. Right. I don't think it's necessary here. I think it would be appropriate, but I don't think it's necessary. And the reason it's not necessary is because of Stewart v. Ussery. And I just refer you to footnote 10 in that decision from 1968. And this court has already grappled with all of the fundamental . . . Wait, Mr. St. Clair, I was just getting out of high school. I mean, just because it's old law don't make it bad law, but come on. No, but it does. And it relies on . . . it relies on authorities that Louisiana has recognized as authoritative . . . But didn't Ketchings have the benefit of that case? I'm sorry? Didn't Ketchings have the benefit of that case? It did, but Ketchings . . . And? Ketchings does not disagree with the position that I'm taking. Ketchings was on a different issue and did not grapple with this issue. But you don't think the Louisiana Supreme Court needs to clean up since 1968? I would be happy for them to do that, Your Honor. I hear you say it's appropriate, but not necessary. I got you. I'm not trying to paint you in a corner. You candidly responded, but it's kind of like when I read briefs and they're citing to me law from 1968 and 1971. I'm like, hmm, and I don't mean Section 1971. Kind of like, there's a whole lot of law that's come over the desk since then, so if you're relying on something like that . . . What I was serious is because this one has these big tax consequences in it, and dollar-wise, as well as the others, it's just . . . It's not troubling, but just hanging our hat on Ketchings or some of these other cases, which may or may not have gone there. But that's not the goal. But go back to your argument, but I wanted to ask the certifying question before it got away. And I do agree with your inclinations. I think this is becoming a more significant issue than a less significant issue. And so, if you chose to certify this to the Louisiana Supreme Court, I think that's appropriate. But this court has answered the question that is before it. This court in Ussery, in footnote 10, said these words. The relations between the usurpatory and the naked owner are not those of an ordinary debtor and creditor. But, no, Mr. Sinclair, you want me to go to a case that old, and then I got to go to the footnote, and it's not even the first footnote. It's footnote 10. You know, got to go bearing down the final law, and you want to say we need to rely on a footnote that somebody stuck down there to be the guy? Come on, Mr. Sinclair. If it wasn't important, it wouldn't have appeared in the opinion at all. Oh, really? Okay. That's why we like oral argument. That is precisely why we like oral argument, rather than taking it on the breeze. All right, I get your point. But not only that, Your Honor. It goes further. It says, since the recovery, because it's talking about consumables. It's not talking about non-consumables. Since the recovery of the right of enjoyment by the naked owner operates automatically at death, the usurpatory or his heirs are obligated to return without delay the objects of the usurpatory. These rules apply even to sums of money contained in the usurp front. And that is precisely what we're talking about. In the civil code, in either the advisory notes or anywhere down there, or from the Louisiana Law Institute and other secondary sources that deal with these state law issues, is there an articulation from the law institute or the other secondary sources about the question which we are talking about? No, not that I'm aware of. And certainly haven't analyzed it on this basis. Okay. As you know, the civil law treatise has dealt with this issue, but not grappled with it in this context, just like catchings didn't grapple with it in this context. And the context is critical. But the treatise sounds like it sort of endorses creditor-debtor concepts as far as— It does. But there's two things that are problematic with the treatise. Number one, when it makes that endorsement, it does not cite to a single code article to get there. And the question that I would ask that you ask the government is point me out to a code article that says when a usurp front becomes a usurp front to consumables, the relationship somehow morphs into a debtor-creditor relationship. You won't find that in the articles, and I don't think counsel for the government can point it out to you because it doesn't exist. No, he's going to point to the tax code. He's not going to point to the civil code. He will. He's going to go to the tax code. And he will beat me like a stick from the tax code. But this case is being decided on Louisiana law, not on the tax code. This issue is decided on Louisiana law. And so there's nothing in the code articles that can get you to a debtor-creditor relationship. What's conceptually wrong with the debtor-creditor analog, if you will? I'm sorry. What's wrong? I'm just saying what's conceptually wrong with the debtor-creditor? It's useful where it is applicable. So it's useful in catchings. It's useful in majus. Because it is in the nature of a ‑‑ it's an obligation that's owed. The question whether is it a creditor-debtor type obligation, a loan money, and I've got to pay it back, or is it an obligation to restore a thing? And that's precisely what we're dealing with here. This is an obligation of restoration, and it's different from paying a debt. What happens when the estate is otherwise insufficient to accomplish the restoration? Because that's got to have come up many times. It's happened here. We're owed $428,000. There's not that much left. So it's a question of who gets paid first. But wouldn't the IRS's obligations, which arose during Henry Sr.'s life, 2013, 14, I can't remember the exact years, before he died, wouldn't those come off the top of the estate before you ever get to the question of the restoration? The first thing you have to get to is what's his estate. And so is this cash his estate, or is this cash what has to be restored to the owners of Tonya Goodrich's estate? The first question is what's his? That sounds more like a life estate. It is. I'd say it's comparable. I don't know all the rules of a life estate, but it is certainly comparable. But the first question you have to grapple with is what's his? And then you get into a who has priority. So the IRS doesn't get past the first question. This is not his. It belongs to the naked owners. What if he paid his taxes, though, during his lifetime? There would be no problem. There would be no recovery. Well, there may not be. Correct. You may be right. But that's what's unique about this case. I try to play a lot of what ifs and try to see if I can come up with an analogy that would work somewhere. And they lead you down different paths. And we're stuck with what we have. And he did not pay his debts. He did not have enough money to pay everybody when it was all over with. And so we have to grapple with the facts that we have. All right. Thank you, Mr. Small. Thank you. I'm exhausted. You're open, but you've certainly reserved rebuttal time. We appreciate your responses to the questions. All right. Mr. Sheehan. May it please the Court? I'm Anthony Sheehan for the United States. I would first like to answer Judge Stewart's question about a reference to the Louisiana Supreme Court. When there is no Louisiana Supreme Court decision, this court may look to the decisions of intermediate state appellate courts. They provide a datum for ascertaining the state law, which is not to be disregarded by this court, unless it is convinced by other persuasive data that the Louisiana Supreme Court would decide differently. For that, I cite Renwick v. P&K, Lake Charles, 901 F. 3rd, 605. And I would say, as I will get to in a moment, that there is no persuasive evidence that the Louisiana Supreme Court would decide this differently. Well, is there a case on point? Excuse me? Is there a case on point? Yes, Your Honor. If you start off, first of all, with the proposition that this is a federal wrongful levy suit, the plaintiffs— Well, it may be a federal wrongful levy suit, but it is a case involving use of fructs and the use of fructus and abuses. You agree that Louisiana state law applies. So don't you? Louisiana state law applies to determine what are the substantive rights of the plaintiffs in this case. In order to bring a wrongful levy suit, they have to show they have an ownership interest or a lien on the property in question. If they don't have that, they cannot bring this wrongful levy suit. Then we turn to Louisiana state law to see what is in the bundle of sticks. What rights do they have to this property as the naked owners? That's what we use Louisiana state law for. Now, the plaintiffs make a big deal about them being naked owners. And the Louisiana statutes don't say naked creditors. Well, I would refer the court to the Supreme Court's decision in Kraft at page 279, where the Supreme Court said the court must look to the substance of the rights state law provides, not merely to the labels it applies or the consequences it draws for state law purposes. So we have to then look to Louisiana state law to figure out what are the— It is within the discretion of this court to do so. I know that, Mr. Sheehan. I know that. That's not what—why does counsel not want to answer the question? I said what objection does the United States Treasury have to certify—if we were to do that? I'm not saying that we are, but I'm just asking. If the court were to do it, we have no objection. Thank you. So we turn now to the Louisiana statutes as the starting point to determine what exactly are the rights of these plaintiffs as naked owners in a usufruct of consumables. And we turn particularly to Article 538. If the things subject to the usufruct are consumables, the usufructuary, Henry Goodrich, becomes the owner of them. He may consume, alienate, or encumber them as he sees fit. At the termination of the usufruct, he is bound only by an obligation to repay. And that is what makes it a very important difference. What about counsel's point that effectively that means it never became— the equivalent amount when he converted the non-consumables to consumables never hit his estate, wasn't part of his estate. In other words, it wasn't subject to the IRS's levy. The question really, I think, Your Honor, is what right do the naked owners have in this money? What is the nature of their rights? Well, if it's like a life estate, could the IRS have levied? If it's a life estate under common law, we'd have to look at the law of the particular state. We can't do that here because they don't have life estate. I'm just asking generally speaking. If it's in the nature of a life estate, the kids own it ultimately. Could the IRS have levied? If it's in the nature of a life estate, it would probably be more like a usufruct of a non-consumable. And no, like the mineral interests, like the townhome property, the kids were able to recover those because it was more in the nature because they, in their case, Henry was merely a prudent administrator. And when he died, the ownership interest automatically reverted to them. However, when he died with regard to this money, with this consumable, all that happened was that there was a debt owed by his estate to the naked owners. So I used the example in my brief of a consumable of a collection of wine, which is, I think, useful because it's a commodity that can go up and down in value. The usufructory has the right to consume the wine, to alienate the wine, to encumber the wine. When he dies, the naked owners do not have any right to any of the original bottles that are left. They have no, they do not obtain ownership of them. He is not obligated to return those bottles to them. They are owed only the original value in money or in goods of similar quantity and quality. So if the value of the wine has gone up, they do not get to participate in the appreciation, just like a creditor. If the value has gone down, they at least get the original value in money or in kind. They are not, again, just like a creditor. But the question I guess I'm grappling with, if I can even articulate it, is where on the line of accounts does this fall, so to speak? Is it more toward the bottom line, the net of the estate, or is it more somewhere up here in the top of the line? In other words, you remove it before it's ever really, before the estate's ever really reckoned with, so to speak. And in other words, when does that, when do you have to return the value? Is it sort of automatic, like it would be if it was a non-consumable, so that it comes off before you ever get into estate matters and levies and things like that? Or is it somewhere lower in the mix? Does that make sense? It would be an unsecured debt, and indeed— But it doesn't sound like unsecured debt if it's more like a life estate. Well, it's, again, we're trying to mix the common law states with Louisiana civil law. And we've got to look at, again, the Louisiana civil law and what are the features, what are the rights given by the Louisiana statutes to the naked owners to see if they have the lien or other interest that they need to bring a wrongful levy suit under 7426 of the Internal Revenue Code. Again, with that focus on them, it has been described in the treatises and in the cases as an unsecured debt. And indeed, the plaintiffs here would concede, I think it's on page one and two of their opening brief, that if they are creditors, the United States takes ahead of them. Let me ask you one question about the proceeds of the cell of security. Are they identifiable? Are they just mingled with other monies? Right now, it's mingled. But in this case, the IRS is holding, I think, $153,000. And it's going to be winner take all. If the naked owners are in the nature of creditors, if that's the label that federal law will apply to this bundle of sticks, the government wins and vice versa. I would also add, we're talking about the state of catching and succession of catching and succession of majeure. We also cited three other Louisiana appellate court cases, Feingertz, Guercio, and I forget the name of the first one off the top of my head, Ditmar, where it did matter. Where it did matter the status of the naked owners as creditors. And in that case, they were all uniformly held to be creditors. Also, the treatise on Louisiana civil law praised the district court in this case for getting the right answer. We turn to Stewart v. Ussery, which was a federal case involving the estate tax and whether there was a terminable interest in the property that would exclude certain property from the marital deduction. And you look at the three tests for a terminable interest. A separate interest in the same property gratuitously passes to someone other than the surviving spouse. Well, yes. The usus and the fructus go to one. The abusus goes to the other. The surviving spouse's interest will terminate. Yes. And the third one, the most important. By reason of the gratuitous passing, the other person may possess or enjoy any part of the property. Well, again, yes. But why? That's the important thing. The why. It is because the naked owners were owed a debt. And when the mother died, the surviving spouse died, there would be a repayment of the debt, which would put into their hands some part of this property. So Stewart does not contradict the government's case. The plaintiff's statement that it is completely at odds with the government's position is, we submit, completely wrong. It simply applies to Louisiana law and recognizes that, yes, the naked owners are entitled to something. They are entitled to have, they have a creditor claim, which they are entitled to have repaid like any other creditor. But that is not enough for them to bring a wrongful levy suit under federal law, which requires a higher interest. Also, looking at footnote 10, I might add that that, in many ways, was not this court speaking. It was this court quoting from a French treatise written, I think, around 1901, which is informative. But we should, of course, be looking at the Louisiana code as it exists today and the Louisiana cases interpreting that code. So in the end, to sum up in this case, there was a use of fructive consumables over the proceeds. The interest of the naked owners was that of a creditor. If you look at all the components of their rights, we look at the bundle of sticks, which the federal government, the federal law gets to put the label on. The label, the appropriate label for this is as a creditor. Because of that, they cannot bring a wrongful levy suit. IRS always wants to gobble up the money. So, you know, it's axiomatic. You want to put the label, you know, on it. But I get that. But anyway, let me ask you a question. In your summary judgment brief, the government argued that standing was an issue, jurisdictionally and so forth, and, you know, didn't sort of percolate up in the later briefs. What was your argument about the standing and are you still, you know, just explain to me that. I know something that was raised in the summary judgment part about the standing. You know, it's not much said about it otherwise. But as you know, if we've got a jurisdictional problem, we have to address that. So just help me understand. Is that still an argument or just was part of it or what? It is still an argument. We do mention standing in our answering brief. Essentially, it comes from this court's precedent. In order to bring a wrongful levy suit, you must have a sufficient interest in the property. 7426 talks about interest or lien have to be more than general credit or interest. And this court, in cases which I don't know off the top of my head, but they are cited in our brief, has described that as standing. I don't think it's Article III standing, but it's more of a statutory standing to be able to bring this kind of cause of action. And standing is the language that this court has used in its opinions. Well, I'm just trying to be clear whether that's a deal breaker. In other words, whether it's sort of front and center that, you know, we have to grapple with before we get to, you know, the merits or whatever, whatever, or whether it was just, you know, kind of an argument the government made. I take it you're talking about prudential standing. Is that what you're kind of arguing? Yes, yes. I mean, the question is to, again, using this court's language from its prior opinions, to have standing to bring a wrongful levy suit, they have to have a sufficient interest in the property, more than a general creditor's interest in the property. That doesn't define the Article III standing. No. As I said, Your Honor, it's not Article III standing. It's more prudential standing, statutory standing. That's tied to your label about debtor to creditor. Correct. Gotcha. Yes. Gotcha, gotcha, gotcha. It all ties together. And standing, again, is the language that this court used in its prior opinions. And we, of course, follow that. That word gets used in a lot of different ways. Yes. And the Supreme Court has been talking a lot about how we use the word jurisdiction, too. Well, that's why I wanted to be clear, you know, what the government was urging, because obviously it wasn't something that, you know, the trial court decided the matter on and just wanted to make sure, you know, somebody hadn't blown past it or we'd go too far and then we're at a point. But I think I understand. Okay. Okay. If there are no further questions, just take a look here. If there are no further questions, we will rest on our brief for the rest. And I thank the court for its time. All right. Thank you, Mr. Sheehan. Appreciate it. Is this your first foray out of the building since COVID? Yes. Mm-hmm. Come down to get some good eating, huh? I figured that. You asked for a pass to get out of DOJ, so you come to New Orleans to get it. Nothing wrong with that. There are plenty of people who did. Mr. Sinclair is going to get a good meal before he goes back to Shreveport as well. So, anyway, it's all good, as well as the panel, I will say. We'll take judicial notice that we will have of the good cuisine. All right, Mr. Sinclair. Mr. Sinclair, the government, you know, I'm not going to go back to the certifying stuff we did that. The government argues, hey, this treatise favorably comments on the judge's treatment here. What say you? The treatise is not uniform. The treatise was favorable to the government's position in a situation that was taken out of context and did not apply here. Let's take a look at the treatise, 618. It's talking about consumables. And it doesn't say payment of debt or payment of general unsecured debt. It says restoration of things. And so when the treatise talks about the obligation at the end of a use of fraud, it doesn't describe it in terms of payment of a debt. It describes it in terms of restoration of things. The Louisiana legislature recognized that you can't have your cake and eat it, too. And this goes to your question. You were asking, I think it goes to your question, you were asking about the proceeds from the stock. And if you were asking about tracking, then that's not at issue here. Read the Mizzou case. The rights do not apply to particular cash. They apply to the cash available in the estate. And that's what happened in Mizzou. They were saying, well, your dollar got spent on medical services. That dollar is not available anymore, and I get to keep this dollar. And that's not what the Louisiana legislature has said. The other way to look at it, it's a bit of labeling, but it's something that really bespeaks a debtor-creditor relationship because it's just fungible money. Yeah. Alvin Rubin and Al Tate spent a lot of time many years ago trying to introduce me to the Code Seville. I'm still listening. But the point is well taken. And the Louisiana legislature has realized that you can't have your cake and eat it, too. And so what they said for non-consumables is that it doesn't morph into a debtor-creditor relationship. What they've said is that the object of the delivery is different. If it's a non-consumable, I have to give back that land, the land that we were talking about. I can't give you any other land. I've got to give you that land. When we're talking about a consumable, I can't spend this on furniture and give this to the naked owner at the end of the use of fraud. I can spend it on furniture, but I have to return a dollar, and this one is certainly good enough to do that. And so the object of my delivery obligation has changed. It's not that dollar. It's this dollar, and that's what distinguishes this between a consumable and a non-consumable. Money is fungible, and the Majude case teaches us that all the money in the estate is available to satisfy the return obligation that is owed to the naked owners. And to your question, it's taken off the top because it does not belong to the estate. And that's precisely what we were trying to do in this case. We were going through the process, almost completed, of getting all the assets converted to money and available to distribute in the estate. With the IRS and everybody else, there were other claimants too, the point was that they didn't go to the court and say, okay, number one, how much of this money belongs to Henry Goodrich, and how much of it is available to his creditors? And that was the first question. The second question would have been, of any remaining amount that's available to his creditors, who gets what? IRS clearly would have sat on top of that heap. Let me ask you this. First off, we rarely get counsel to effectively use demonstrative evidence in the court of appeals, so I'll just take duly noted you're probably not going to leave that money up on the bench when you leave. When you use it for so much. More seriously, assuming we don't go down the road of certifying this, but decide the case and make the hearing, articulate for me what the holding you would have the panel make in order for your client to prevail that's harmonious with the case law that we're staring down. I think it's fairly simple. It's two things. Number one. Nothing is simple, Mr. Chairman. All right. I think it can be simple. Number one, as anticipated, the government did not give you a single word out of a single code article that says this is a creditor-debtor relationship. So if you just do what you're supposed to do. My question is, articulate in a declarative statement what the holding of this pound would be, consistent with the case law, if we were to rule in favor of your client. Yes. It's identical to the language that was found in Stewart v. Estrey, and that is this. Say it for me, Mr. St. Clair. Don't read me a case. You've been with this case a long time. Just look straight at me, because if you can't tell me the relief that you want from the pound, then that may be a clue. The naked owner claims as an owner, not as a creditor, and therefore he prevails in this circumstance over the IRS because the IRS is seeking the funds of the estate, and we're seeking to recover what we already inherited 14 years before the estate occurred. Citing to what? The code articles themselves?  When the stocks were sold, what taxes were paid on them? The taxes that were due, and so that comes out of this. Code articles deal with that, Your Honor. I don't have the site for you here, but they do. So the taxes that were paid would come off of the amount that the naked owners would receive, and that's factored into the $428,000. All right. Thank you, Your Honor. All right. Thank you, Mr. St. Clair. Thank you, Mr. Sheehan. We appreciate the very helpful briefing and the oral argument in this case. You can't beat our job for variety. We had a huge criminal conspiracy case first, and then we get used to Frux, and then follow them behind. We got an insurance case, so it doesn't get better than this. But we appreciate your argument, and the case will be submitted, and we'll decide it. Before we take up the third case, the panel will be in just a real short recess, and then we'll come back.